1
2
3
4            UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7  LINDA COELHO, | Case No. 3:13-cv-04060-JSC |
| 8        Plaintiff, | |
| 9     v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CLAIM FOR AWARD OF BENEFITS |
| 10  CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| 11        Defendant. | |

12

13        Plaintiff Linda Coelho seeks social security disability benefits for a combination of

14   impairments, including bilateral wrist tenosynovitis, cervical degenerative disc disease with

15   chronic neck pain and right upper extremity pain, and chronic left knee pain.  Pursuant to 42

16   U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff filed this lawsuit for judicial review of the final

17   decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim.

18   Now pending before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.

19   (Dkt. Nos. 16, 20.)  After carefully considering the parties' submissions, the Court finds that the

20   Administrative Law Judge ("ALJ") committed legal errors, and therefore GRANTS Plaintiff's

21   motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and

22   REMANDS for an award of benefits.

23                         **LEGAL STANDARD**

24        A claimant is entitled to disability insurance benefits if she can demonstrate that she is

25   unable to engage in substantial gainful activity due to a medically determinable physical or mental

26   impairment that can be expected to result in death or last for a continuous period of not less than

27   12 months.  42 U.S.C. § 423(d)(1).  The ALJ conducts a five-step sequential inquiry to determine

28   whether a claimant is entitled to benefits.  20 C.F.R. § 416.920.  At the first step, the ALJ

United States District Court
Northern District of California

United States District Court
Northern District of California

considers whether the claimant is currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work; if the claimant is not capable of performing his past relevant work, the fifth and final step asks whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. *Id*. §§ 404.1520(b)-404.1520(f)(1).

## PROCEDURAL BACKGROUND

Plaintiff previously filed an application for social security income benefits on December 9, 2004. (AR 13.)   Administrative Law Judge ("ALJ") Richard Laverdure denied supplemental security income benefits and his decision was later affirmed by the Appeals Council and Judge Jeffrey S. White of the United States District Court for the Northern District of California.  (AR 13.)

On May 11, 2009, Plaintiff filed the underlying Title XVI claim for supplemental security income benefits alleging changed circumstances.  (AR 13.)  Plaintiff contends that she suffers from cervical degenerative disc disease with chronic neck pain and right upper extremity pain, which also causes pain to radiate down to her arms and hands.  (AR 38, 393-395.)  She also alleges pain in her left knee due to a meniscal tear despite having surgery to correct the tear as well as bilateral hand and wrist pain caused by Dequervain tendonitis which leads to difficulty with grip strength.  (AR 394, 353, 581.)  Finally, Plaintiff alleges that she was diagnosed with an anxiety disorder.  (AR 545, 549.)

The Social Security Administration ("SSA") denied her application on July 20, 2009, and again on reconsideration.  (AR 13.)  Plaintiff then filed for a hearing on April 2, 2010.  (*Id*.)  After

hearing her case, ALJ Caroline H. Beers issued an unfavorable decision on February 23, 2012. (AR 25.)  Upon requesting review by the Social Security Administration Appeals Council, Plaintiff was denied review by the council on July 3, 2013.  (AR 1.)  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this action followed.

## FACTUAL BACKGROUND

Plaintiff has a 10th grade education, is 54 years old, and last worked in 2000.  (AR 42, 261, 277, 288, 618).  She lives at home with three of her children and her great-niece.  (AR 41.)  Due to her symptoms, Plaintiff contends that she has been precluded from daily activities that she did in the past.  (AR 300.)  Due to the pain, she can only stand for around ten minutes at a time and is only able to sit still for five minutes.  (AR 61, 282.)  Plaintiff has great difficulty performing light household chores and alleges that she can no longer clean, wash dishes, vacuum, and do laundry. (AR 281, 369.)  She has to stop an activity every five to ten minutes because of pain.  (AR 282.) Plaintiff relies on her nephew to act as her caregiver and to perform basic chores such as vacuuming, cleaning, and washing dishes.  (AR 303.)  Plaintiff has trouble picking up objects due to weakness in her wrists and hands.  (AR 304.)  She cannot cook, because she has a tendency to drop things, which often results in burns or cuts.  (AR 305.)  Finally, Plaintiff alleges that the range of motion she has with her knee precludes her from walking far distances and from sitting down for a long period of time.  (AR 46-47.)  She sometimes uses a cane when walking and when going out someone has to accompany her because she has tendency to fall.  (AR 306, 309.)

### A.  Medical History & Evaluations

Plaintiff began visiting the Native American Health Center for medical care in 1994.  (AR 374.)  She has seen numerous doctors there, two of whom submitted medical source statements on her behalf.  The administrative record contains notes from her medical care at the Native American Health Centers, notes regarding her physical therapy, and her MRIs, as well as reports by treating and examining physicians.

#### 1.  Treating Source Opinions

##### a.  Dr. Williams

Dr. Williams of the Native American Health Clinic began treating Plaintiff in 2008.   She

3

provided evaluations of Plaintiff's residual functional capacity on July 21, 2009 and again on September 30, 2010. (AR 415, 586.) In her initial opinion, Dr. Williams opined that Plaintiff's ability to sit, stand, or walk was limited to less than two hours out of an eight-hour workday and that Plaintiff cannot even occasionally lift ten pounds because of shoulder and neck pain which is exacerbated by lifting. (AR 415.) In her September 2010 evaluation Dr. Williams completed a different form evaluating Plaintiff's physical capabilities wherein she opined that Plaintiff could sit, stand or walk for less than two hours at a time, but she could do any of these activities for two to four hours total during an eight-hour work day. (AR 587.) She also opined that due to shoulder and hand pain Plaintiff was limited to non-repetitive work and lifting or carrying less than 15 pounds occasionally. (AR 588.) Dr. Williams indicated that Plaintiff could not work due to her chronic condition. (AR 586.)

#### b.  Dr. Lash

Plaintiff also received treatment from Dr. Bhrett Lash, an internal medicine specialist at the Native American Health Center. Dr. Lash completed the same form as Dr. Williams to evaluate Plaintiff's physical capabilities and he likewise concluded that Plaintiff was unable to work due to her chronic condition. (AR 606.) Dr. Lash opined that Plaintiff can sit, stand, or walk for two to four hours in an eight-hour workday and that she cannot lift ten pounds even occasionally. (AR 607-608.)

### 2.  Examining Opinions

#### a.  Dr. Johnson

Dr. Johnson of the Sunnybrook Medical Group, a Doctor of Osteopathic Medicine (D.O.) specializing in physical medicine and rehabilitation, examined Plaintiff on July 7, 2009 on behalf of the agency. (AR 394, 400.) Dr. Johnson's opinion was based on his examination of Plaintiff and "one outside record from an unknown clinic." (AR 394.) He found that the range of motion of Plaintiff's wrists and fingers was within normal limits and that the fine motor coordination of her bilateral hands was normal. (AR 397.) Furthermore, Dr. Johnson found that both of Plaintiff's knees had normal ranges of motion. (AR 397.) However, he did find that the left knee was tender to palpation. (AR 397.) Dr. Johnson also found some tenderness in the shoulders, but

United States District Court
Northern District of California

4

1   concluded that her range of motion was within normal limits.  (AR 397.)  Dr. Johnson stated that

2   the physical examination revealed a "slightly decreased range of motion of the cervical spine with

3   tenderness to palpation of the cervical paravertebral musculature" and "chronic cervicalgia

4   secondary to degenerative joint disease and possibly degenerative disk disease."  (AR 399.)  He

5   concluded that Plaintiff could lift and carry twenty pounds occasionally and 10 pounds frequently

6   and that she could sit, stand, or walk six hours out of an eight-hour workday.  (AR 399.)

### b.  Dr. Bai

8   Dr. Bai, a board certified physician specializing in Physical Medicine and Rehabilitation at

9   the Sunnybrook Medical Group, examined Plaintiff at the request of the ALJ.  His evaluation of

10  Plaintiff is based on his physical examination of her on December 21, 2011, her medical records

11  from Dr. Cheung, an orthopedic surgeon, and her 2011 MRI.  Dr. Bai concluded that Plaintiff is

12  able to carry or lift twenty pounds occasionally and ten pounds frequently.   (AR 352, 357-58.)

13  Dr. Bai also found that Plaintiff can sit, stand, or walk for six hours out of an eight-hour workday.

14  (AR 357.)  Dr. Bai acknowledged that Plaintiff had left knee pain similar to bursitis and

15  degenerative disc and joint disease.  (AR 357.)  Although he acknowledged that grip strength

16  testing was done poorly due to reported pain in Plaintiff's hands, he did not find that Plaintiff had

17  any tenderness in bilateral hands and wrists during the examination.   (AR 357.)  Dr. Bai's

18  examination found a decreased range of motion in Plaintiff's cervical spine, lumbar spine, and left

19  knee.  (AR 355-56.)

### c.  Dr. Cohen

21  Dr. Emily Cohen, a board certified family medicine physician, examined Plaintiff on

22  December 9, 2010 at the request of Plaintiff's counsel.  Dr. Cohen conducted a physical

23  examination of Plaintiff and reviewed her medical records from the Native American Health

24  Center, Alameda County Medical Center, Tri-City Physical Therapy, Insight Imaging (MRI),

25  Norman Cheung, M.D., and Sunnybrook Medical Group.  (AR 580.)  Dr. Cohen opined that

26  Plaintiff has chronic neck pain and left knee pain, and probable bilateral Dequervain's

27  tenosynovitis and that Plaintiff meets the criteria of social security impairment listing 1.04:

28  Disorders of the Spine.  (AR 584.)  In making this determination, Dr. Cohen concluded that

Plaintiff has

> Cervical degenerative changes with a C3-4 posterior osteophyte – disc complex with mild deformity of left anterior cervical cord and moderate left and mild right foraminal narrowing as well as C5-6 moderate to severe central and moderate bilateral foraminal narrowing noted on MRI on 6/9/2009.  She has evidence of nerve root compression characterized by radicular pain and weakness in a neuro-anatomic distribution in her right upper extremity . . . including limited cervical range of motion, sensory loss of light touch to right thumb, weakness of right grip and thumb opposition strength, and hyperreflexia of right bicep deep tendon reflex.

(AR 584.)

### 3.  Other Medical Evidence in the Record

#### a.  Dr. Cheung

Dr. Norman Cheung, an orthopedic surgeon, diagnosed Plaintiff with a medial meniscal tear in her left knee (1/10/07), a lateral meniscal tear in her left knee (4/27/07), tendonitis dequervain in both wrists (10/22/07), myofascitis (7/30/08), and arthritis in her left knee (7/30/08). (AR 386.)  On August 7, 2007, Dr. Cheung performed a left knee arthroscopy with a medical menisectomy and a plica resection.  (AR 386.)  Thereafter, he referred Plaintiff to physical therapy because of possible early osteoarthiritis.  (AR 581.)

#### b.  MRI evidence

Plaintiff underwent several MRI tests from 2009 to 2011.  A 2009 MRI showed "degenerative change and spondylosis of the cervical spine," "end plate signal changes that are most likely degenerative," "moderate left foraminal narrowing," "posteriror osteophyte-disc complex with mild deformity of the left anterior cervical cord," "moderate left and mild right foraminal narrowing," and "moderate to severe central and moderate bilateral foraminal narrowing."  (AR 393.)  A MRI taken on January 27, 2010 "revealed degenerative changes in the inferior C-spine" and ostephyte disk complex, which is causing bilateral foraminal stenosis and an element of central canal narrowing.  (AR 593.)  Another MRI, taken on October 16, 2011, revealed "Severe central stenosis with triangular cord deformity at C5-6 due to disc spur complex," "Cervical kyphosis centered at C5 is unchanged," "Moderate to severe bilateral foraminal stenosis at C5-6," and "Asymmetric uncinate and facet hypertrophy of the left at C3-4

United States District Court
Northern District of California

and C4-5."  (AR 610.)

### c.  Physical Therapy

Plaintiff participated in physical therapy up to three times a week for her knee pain, but stopped attending sessions because it made her neck pain worse.  (AR 447.)  Tri-City Physical Therapy reports indicate that Plaintiff had decreased flexibility and weakness of bilateral upper extremity and the left knee.  (AR 474.)  Furthermore, the notes state that Plaintiff's wrist symptoms were due to her neck arthritis and tightness and that numbness and tingling to the hands would be reduced if the neck was treated.  (AR 474.)

## B. The ALJ Hearing

### 1.  Plaintiff's testimony

Despite her symptoms, Plaintiff is capable of driving twice a week to a store that is close to her residence (AR 41); however, she usually only goes once a week and never goes alone.  (AR 53.)  She also attends church a few times a month with her family.  (AR 54.)  Since she is no longer able to drive her kids to school every day, they walk (AR 41-42), and she is unable to write because of her symptoms.  (AR 42.)  She also claims that she has not been able to work since her last part-time job at a daycare in 1999 or 2000 due to her neck problems.  (AR 42-43.)  She "can't do things for too long" due to throbbing which starts from her neck and goes down to her arms.  (AR 44.)  Further, the range of motion of her knee precludes her from walking very far and even from sitting down for too long.  (AR 46-47.)

In describing the range of motion in her neck, she testified that she can turn it to look around, but must do so slowly.  (AR 56.)  She also feels numbness and tingling in her fingers and hands.  (AR 56.)  Her ability to reach is also impaired (AR 56); for instance, she cannot reach back to fix her hair.  (AR 60.)  Indeed, all of her symptoms have limited her ability to participate in daily activities.  For example, Plaintiff no longer cooks and relies on her daughter to cook.  (AR 50.)  She even needs help to get out of the bath.  (AR 50.)  Due to her limited ability to participate in daily activities, someone usually checks up on her.  (AR 52.)  Plaintiff's children do all the chores in the house because of her limitations.  (AR 53.)  Her conditions also affect her ability to sleep: Plaintiff wakes up several times during the night because of the pain and has to change

United States District Court
Northern District of California

1   sleeping positions.  (AR 50.)  After waking due to pain, she alternates between her bed and a

2   lounge chair.  (AR 50.)

3        Plaintiff performs a home traction exercise for her neck at least once every day.  (AR 45.)

4   She also daily wears splints for her right wrist and a few times a week for her left wrist.  (AR 57.)

5   She takes ibuprofen, Vicodin, and sleeping pills to relieve her pain.  (AR 45.)  Her pain level is a

6   seven out of ten even after taking her medications and her sleeping pills do not help her sleep.

7   (AR 46, 49.)  Plaintiff's knee surgery "really messed [her] up."  (AR 55.)  She was deterred from

8   having surgery on her neck because of her bad experience with the knee surgery and because her

9   doctor would not guarantee that there would be an improvement.  (AR 55.)

10       **2.   Vocational Expert Testimony**

11       The ALJ presented Vocational Expert ("VE") Nancy Rynd with two hypotheticals.  In the

12   first hypothetical, the person was Plaintiff's age with a disability onset at age 44 and had the

13   following functional limitations: she can sit, stand, or walk for up to six hours out of an eight-hour

14   workday, she can life or carry 10 pounds frequently and 20 pounds occasionally, can occasionally

15   perform overhead reaching with her right extremity, occasionally push and pull with her upper and

16   lower extremities, and can perform simple tasks that are consistent with SVP 2 entry level work.

17   The VE concluded that such an individual could not perform Plaintiff's past work, but that there

18   were other light level positions that the person could do including as a storage rental clerk for

19   which there are 1,000 jobs locally, an information clerk for which there are 1,000 jobs locally, and

20   hostess for which there are 500 jobs locally.  (AR 66.)  At the sedentary level, the VE concluded

21   that there were approximately 300,000 jobs nationally and 1,000 jobs locally that such an

22   individual could perform including surveillance system monitor, call out operator, and order clerk.

23   (AR 67-68.)

24       In the second hypothetical, the individual was similarly Plaintiff's age with a disability

25   onset at age 44 and who had the following functional limitations: an ability to sit, stand or walk for

26   six hours in an eight-hour workday, the ability to lift and carry 10 pounds occasionally and less

27   than 10 pounds frequently, the ability to do occasional bilateral overhead reaching and occasional

28   non-forceful pushing and pulling, but could not do forceful gripping or grasping, and who could

1  perform simple tasks that are consistent with SVP 2 entry level work.  (AR 67.)  The VE testified

2  that such a person could only perform the jobs listed at the sedentary level given the very limited

3  lifting.  (AR 68.)

### 3.  The ALJ's Findings

4  In a February 23, 2012 decision, the ALJ found Plaintiff not disabled under section

5  1614(a)(3)(A) of the Social Security Act using the five-step disability analysis.  Although the ALJ

6  held that there were changed circumstances in Plaintiff's condition since Judge Laverdure's 2007

7  decision denying benefits, she likewise denied benefits concluding that Plaintiff was not under a

8  disability at any time since her application was filed.  (AR 14-25.)

9  At step one, the ALJ concluded that Plaintiff has not worked since May 11, 2009 and

10  therefore a disability finding is not precluded by work activity (AR 15.)

11  At step two, the ALJ found that Plaintiff has severe impairments, consisting of

12  "degenerative disc disease, central canal bilateral neuroforaminal stenosis at C-5-6 and C6-7, left

13  knee pain, [and] bilateral hand and wrist pain and anxiety."  (AR 16.)  The ALJ concluded that in

14  addition to the 'severe' back impairment identified by Judge Laverdure, the claimant now suffers

15  from a 'severe' left knee impairment and a 'severe' anxiety disorder which have more than a

16  minimal effect on her ability to work."  (AR 16.)  Thus, the ALJ concluded that the record

17  supports a finding that there have been changed circumstances in the claimant's condition since

18  the date of Judge Laverdure's decision.  (AR 16.)

19  At step three, the ALJ found that the Plaintiff did "not have an impairment or combination

20  of impairments that meets or medically equals one of the listed impairments."  (AR 16.)  More

21  specifically, the ALJ concluded that Plaintiff did not meet listings 1.02, 1.04, and 12.04.  (AR 17.)

22  She found that Plaintiff did not meet listing 1.02 because her "medical records do not describe

23  gross anatomical deformity with limitation of motion or other abnormal motion in one major

24  peripheral weight-bearing joint resulting in an inability to ambulate effectively or in one major

25  peripheral joint in each upper extremity resulting in an inability to perform fine and gross

26  movements effectively."  (AR 17.)  Plaintiff did not met listing 1.04 because her medical record

27  did not convey evidence of "nerve root compression characterized by pain," "limitation of motion

United States District Court
Northern District of California

in the spine," "motor loss," and "sensory or reflex loss." (AR 17.) Finally, Plaintiff's mental impairment did not meet the criteria required by listing 12.04 because the evidence does not meet at least two of the following criteria: "marked restriction of activities of daily living; marked difficulties of pace; or repeated episodes of decompensation, each of extended duration." (AR 17.) The ALJ found that the activities of Plaintiff's daily life equate to a mild restriction because despite certain limitations, Plaintiff was reported to be able to "perform some light household chores, bathe and dress herself, go shopping and drive her children to school." (AR 17.)

At step four, in consideration of Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (AR 23.) The ALJ concluded that Plaintiff

> has the residual functional capacity to perform light work . . . with lifting of 10 pounds frequently and 20 pounds occasionally; and sitting, standing or walking for 6 hours each in an 8 hour day. She can perform only occasional overhead reaching with the right upper extremity; occasional pushing and pulling with the upper and lower extremities; occasional climbing, stooping, kneeling and crouching; and she cannot perform work involving exposure to hazards such as unprotected heights and dangerous moving machinery or involving concentrated exposure to extreme cold and humidity. The claimant is further limited to performing simple, entry-level tasks, consistent with a SVP of 2 . . . involving simple, work-related decisions with few workplace changes.

(AR 18.)

In reaching this conclusion, the ALJ gave great weight to Dr. Johnson and Dr. Bai's opinions because both doctors are specialists and their conclusions "were based upon an examination of the claimant as well as a review of all the existing orthopedic medical evidence." (AR 20.) The ALJ gave no weight to the opinions of Dr. Williams and Dr. Cohen. (AR 20.) Dr. Williams' opinion was given no weight because she "failed to identify any objective findings to support her conclusions that the claimant could do no lifting and could stand, walk and sit for less than 2 hours." (AR 21.) According to the ALJ, "[t]he only 'medical finding' that Dr. Williams identified at the time of his [sic] July 2009 evaluation was 'neck.'" (AR 21.) The ALJ also emphasized that Dr. Williams was not a specialist in physical medicine and rehabilitation nor an

United States District Court
Northern District of California

1    orthopedist and her opinion was inconsistent with specialists Dr. Johnson and Dr. Bai.  (AR 21.)

2    The ALJ concluded that Dr. Cohen's opinion was not entitled to any weight because "she is not a

3    treating physician nor an orthopedic or physical medicine and rehabilitation specialist, she saw the

4    claimant only one time and at the request of the claimant's attorney, suggesting that her

5    examination was not performed at arm's length."  (AR 21.)

6         The ALJ gave little weight to treating physician Dr. Lash's opinion.  (AR 21.)  The ALJ

7    concluded that Dr. Lash's conclusions were inconsistent because "while stating that the claimant

8    was significantly limited in sitting, standing, walking, lifting, climbing, balancing, stooping,

9    kneeling, crouching, crawling, reaching above shoulders, using her hands/fingers for repetitive

10   motion and using her feet for repetitive movements, he also stated that she had no limitations

11   which would affect her ability to participate in education or training and that she had no condition

12   which would prevent her from providing care for children in her home."  (AR 21-22.)  The ALJ

13   also considered that Dr. Lash is not a specialist, did not treat or examine Plaintiff in January 2009

14   when she stated that her limitations began, and some of his conclusions were based on left knee

15   pain due to a torn meniscus "a condition which is not confirmed in the evidence of record."  (AR

16   22.)

17        Finally, the ALJ rejected the claimant's statements and those of her daughter regarding her

18   symptoms, concluding that they did not establish that the claimant was disabled.  (AR 22.)  In

19   doing so, the ALJ found Plaintiff and her daughters' statements to be inconsistent:

20           Although the claimant and her daughters reported that the claimant
             needs assistance with household chores, the claimant stated that she
21           is able to go shopping, can drive short distances, and can attend
             church several times per month . . . In addition, while the claimant
22           reported that she has great difficulty using her hands and cannot pick
             up a cup or dishes, she testified that she was able to pick up coins
23           and that she could open a door.

24   (AR 22.)  The ALJ further concluded that since Plaintiff "has received no significant treatment"

25   for her neck, shoulder, and knee symptoms since early 2011 and no psychiatric treatment since

26   March 2007, her statements did not establish that she was disabled.  (AR 22.)  The ALJ also found

27   that Plaintiff's presentation at her hearing undermined her credibility because it was over

28   exaggerated: Plaintiff "laid back in her chair, slouched down with her right hand in the air and

11

1   groaned a lot [and] [a]lthough she testified that she could not sit for more than 5 minutes, she did

2   so during the hearing."  (AR 23.)

3       At step five, the ALJ concluded that, in consideration of Plaintiff's age, education, work

4   experience, and residual functional capacity, "there are jobs that exist in significant numbers in the

5   national economy that" Plaintiff can perform.  (AR 24.) The ALJ based this conclusion on the

6   Vocational Expert's testimony.  (AR 24.)  The ALJ thus concluded that Plaintiff was not disabled

7   as defined in the Social Security Act.  (AR 25.)

8                                     **STANDARD OF REVIEW**

9       The Court's jurisdiction is limited to determining whether the Social Security

10   Administration's denial of benefits is supported by substantial evidence in the administrative

11   record.  *See* 42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it

12   is not supported by substantial evidence or if the decision is based on legal error.  *See Andrews v.*

13   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

14   1989).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

15   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

16   *Andrews*, 53 F.3d at 1039.  Determinations of credibility, resolution of conflicts in medical

17   testimony and all other ambiguities are to be resolved by the ALJ. *See id*.; *Magallanes*, 881 F.2d at

18   750.  The decision of the ALJ will be upheld if the evidence is "susceptible to more than one

19   rational interpretation."  *Andrews*, 53 F.3d at 1040.

20                                       **DISCUSSION**

21       Plaintiff contends that the ALJ: (1) erred in evaluating the medical opinions in the record;

22   (2) erred in making a boilerplate finding that Plaintiff does not meet listing 1.04(A); (3) erred in

23   determining Plaintiff's residual functional capacity; (4) erred in finding that Plaintiff has past

24   relevant work; (5) failed to meet the ALJ's burden at step five; and (6) erred in evaluating the

25   credibility of Plaintiff and her daughters.

26   **A.**     **The ALJ's Evaluation of the Medical Opinions**

27       In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:

28   (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the

United States District Court
Northern District of California

United States District Court
Northern District of California

claimant (examining physicians), and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician as to the nature and severity of a claimant's impairment(s) is given more weight than that of a non-examining physician. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Nevertheless, a treating physician's opinion is only regarded as controlling where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If a treating physician's opinion is contradicted by that of another physician, the ALJ may only reject the treating physician's opinion if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830 (internal citation omitted). An ALJ may "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted). However, if the treating physician's opinion is not contradicted, however, it can only be rejected for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Here, Plaintiff contends that the ALJ erred in rejecting the opinions of her two treating physicians, Dr. Williams and Dr. Lash, and her examining physician, Dr. Cohen. The ALJ gave no weight to the opinions of Dr. Williams and Dr. Cohen, and gave little weight to the opinion of Dr. Lash. The ALJ instead rested her decision on the opinions of the Agency's two examining physicians who concluded that Plaintiff could perform a reduced range of light work. One of the Agency's examining physicians, Dr. Johnson, only reviewed "one outside record from an unknown clinic" and did not review any other records, including the records of the multiple MRIs Plaintiff underwent. (AR 394.) The other Agency physician, Dr. Bai, did not review Plaintiff's records from the Native American Health Center where she had received treatment since 1994,

United States District Court
Northern District of California

1   including the records of Drs. Williams and Cohen, nor did Dr. Bai review Plaintiff's physical

2   therapy records.  (AR 352.)

3          The Court must consider whether the ALJ provided specific and legitimate reasons for

4   rejecting the opinions of Drs. Williams, Lash, and Cohen in lieu of those of Drs. Johnson and Bai.

5   As set forth below, the Court concludes that the ALJ did not.

6          **1.   Treating Physician Dr. Williams**

7           The ALJ declined to accord any weight to Dr. Williams' findings because (1) she failed to

8   identify any objective findings to support her conclusions, (2) her opinions were inconsistent with

9   the state's examining physicians' opinions, and (3) she is not an orthopedist or specialist.  (AR

10  21.)  The Court addresses each basis in turn.

11         **a)   Dr. Williams' Objective Findings**

12         First, the ALJ concluded that Dr. Williams' opinions regarding Plaintiff's functional

13  limitations were not "supported by medically acceptable clinical and laboratory diagnostic

14  techniques."  (AR 21.)  The ALJ specifically faults Dr. Williams for only identifying "neck" as the

15  "medical finding" in support of her July 2009 evaluation, but this finding misstates the contents of

16  the document.  Dr. Williams indicated "neck" in response to the question asking for the medical

17  findings that supported Dr. Williams' assessment that Plaintiff needed to alternate between sitting

18  and standing; however, further down on that same page, in response to a question calling for

19  evidence supporting the restrictions identified, it states "PL not safe in a workplace due to

20  Neck/shoulder pain at [unintelligible] unable to perform simple tasks reliably or safely."  (AR

21  416.)  Likewise, on the preceding page Dr. Williams states that the bases for her lifting, sitting,

22  and standing restrictions are neck and shoulder pain.  (AR 415.)

23         Moreover, the law does "not require that a medical condition be mentioned in every report

24  to conclude that a physician's opinion is supported by the record."  *See Orn v. Astrue*, 495 F.3d

25  625, 634 (9th Cir. 2007).  Thus, Dr. Williams' failure to cite all of the clinical evidence in support

26  of her findings is not a basis for rejecting her opinion where that evidence is in the record.   For

27  example, Plaintiff's 2009 MRI, which was ordered by Dr. Williams, shows "degenerative change

28  and spondylosis of the cervical spine," and "moderate left foraminal narrowing" among other

United States District Court
Northern District of California

issues.  (AR 393.)  The Commissioner's reliance on *McDonald v. Colvin,* 2013 WL 5372896 *3 n.5 (E.D. Cal. Sep. 25, 2013) is unpersuasive as the *McDonald* court did not cite, let alone apply, controlling Ninth Circuit law.  It is noteworthy that the Commissioner does not dispute that the 2009 MRI result is an objective medical finding supporting Dr. Williams' opinion.

Further, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required… The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (footnote omitted). Here, the ALJ did not even discuss the 2009 MRI or any of the other clinical evidence in the record when she concluded that Dr. Williams' "opinions were not supported."  (AR 21.) Similarly, the ALJ simply dismissed Plaintiff's "subsequent treatment records from Dr. Williams from August 2010 through April 2011" as "reflect[ing] no significant objective findings."  (*Id*.)  It is unclear what the ALJ means as there is no record citation.  Plaintiff's treatment records from September 9, 2010 to April 4, 2011 indicate "chronic pain" (AR 599, 601, 603); "orthopedic contact" (AR 599, 601); "reviewed options for [illegible] radiculopathy surgery" (AR 603). Further, Plaintiff's January 2010 MRI indicates that "degenerative disc changes of the cervical spine most prominent at the C5-6 level where disc osteophyte complexes and a 2.0 mm right paracentral component with annular tear combine with uncontrovertable joint hypertrophy to cause moderately severe bilateral neural forminal narrowing and mild narrowing of the central canal as above." (AR 591.)

Thus, the ALJ's conclusion that Dr. Williams' opinion was not supported by objective findings is both contradicted by the objective evidence, including the MRIs, in the record and conclusory such that it fails to articulate specific and legitimate reasons for rejecting her opinion.

**b) Inconsistencies between Dr. Williams' opinion and those of the state examining physicians**

The ALJ also rejected Dr. Williams' opinions because they were inconsistent with the opinions of state examining physicians Drs. Johnson and Bai, both of whom determined that

United States District Court
Northern District of California

1   Plaintiff could perform a reduced range of light work.  "When an examining physician relies on

2   the same clinical findings as a treating physician, but differs only in his or her conclusions, the

3   conclusions of the examining physician are not 'substantial evidence.'"  *Orn*, 495 F.3d at 632.

4   Here, the ALJ merely stated that "Dr. Williams' opinions are inconsistent with other substantial

5   evidence in the record, i.e., they are inconsistent with the opinions of Dr. Johnson and Dr. Bai who

6   are specialists in the field of orthopedic medicine."  That they reached different conclusions is not

7   reason alone to reject the opinion of treating physician Dr. Williams.

8        Further, even if Dr. Johnson and Dr. Bai's opinions constitute substantial evidence, Dr.

9   Williams' opinion, as a treating physician, is still entitled to deference.  *Id*. at 632-33 ("If there is

10   substantial evidence in the record contradicting the opinion of the treating physician, the opinion

11   of the treating physician is no longer entitled to controlling weight," however, "even when

12   contradicted by an opinion of an examining physician that constitutes substantial evidence, the

13   treating physician's opinion is still entitled to deference") (internal quotation marks omitted).

14   Thus, the ALJ erred in rejecting Dr. Williams' opinions in their entirety simply because her

15   conclusions were inconsistent with those of the examining physicians.

16        **c) Dr. Williams is not a Specialist**

17        The ALJ also stated that she was giving no weight to Dr. Williams' opinions because she

18   was a general practitioner rather than a specialist.  (AR 21.)  This determination was in error.  That

19   an examining physician is a specialist is but one factor the ALJ can consider in weighing a

20   medical opinion.  Indeed, an ALJ should consider all of the following factors to determine what

21   weight to give a treating physician's opinion: length of the treatment relationship and the

22   frequency of examination, nature and extent of the treatment relationship, supportability,

23   consistency, specialization, and any other factors that may have bearing.  20 C.F.R. §

24   404.1527(c)(2)-(6); *see also Orn*, 495 F.3d at 632.  While Dr. Williams' status as a primary care

25   physician is something the ALJ can consider, the ALJ should also consider the nature and extent

26   of Dr. Williams' treatment relationship with Plaintiff and the length of that treatment relationship,

27   both of which favor giving more weight to the opinion of Dr. Williams.  Indeed, "[t]he treating

28   physician's continuing relationship with the claimant makes him especially qualified to evaluate

16

reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996).

In sum, none of the ALJ's proffered reasons for rejecting the opinion of Plaintiff's treating physician constitute the specific and legitimate reasons required by law. Thus, the ALJ erred in giving no weight to the opinion of Plaintiff's treating physician, Dr. Williams.

### 2.  Treating Physician Dr. Lash

The ALJ assigned little weight to the opinion of Dr. Lash, another treating physician.  The ALJ did so because she found that Dr. Lash's conclusions were internally inconsistent, some were not supported by the record, and Dr. Lash was neither a specialist in physical medicine and rehabilitation nor an orthopedist.  (AR 21-22.)

The ALJ cited Dr. Lash's statement that Plaintiff has left knee pain "chronic 2 torn meniscus" as a basis for discounting his opinion because this condition was not confirmed by the evidence in the record.  (AR 607.)  However, Dr. Cohen and Dr. Cheung diagnosed Plaintiff with chronic left knee pain, a history of meniscal repair, and osteoarthritis. (AR 585, 581.)  Moreover, no one—including the ALJ—disputes that Plaintiff has chronic knee pain.  Likewise, the ALJ's objection to Dr. Lash's statement that Plaintiff's condition began in 2009 when there was no evidence in the record that Dr. Lash had examined Plaintiff in 2009 is not a proper basis to reject his opinion: Plaintiff's treatment records with the Native American Health Center—where Dr. Lash treated Plaintiff—go back to 1994. (AR 374.)  Thus, the record is wholly consistent with Dr. Lash being familiar with Plaintiff's medical records and thus the date of the onset of her condition.

The ALJ also discounted Dr. Lash's opinion based on his non-orthopedist status.  Unlike with Dr. Williams, the ALJ did not use Dr. Lash's generalist position  to wholesale disregard Dr. Lash's opinions; rather, the ALJ assigned "little weight" to his opinions on this basis. Nonetheless, as with Dr. Williams, because Dr. Lash was Plaintiff's treating physician the ALJ should have considered all the factors—the length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency,

specialization, and any other factors that may have bearing—not just Dr. Lash's lack of specialization.  20 C.F.R. § 404.1527(c)(2)-(6); *see also Orn*, 495 F.3d at 632.  This analysis is not apparent from the ALJ's opinion.

Finally, the ALJ relied upon the apparent inconsistency on the cover page of Dr. Lash's August 2011 evaluation of Plaintiff to discount his opinion.   Dr. Lash checked the box indicating that Plaintiff was unable to work, but also checked boxes indicating that Plaintiff had no limitations that affected her ability to participate in training and education or with respect to providing care for her children.  (AR  606.)  Plaintiff contends that these statements are not inconsistent because the record demonstrates she can do these things if she has significant help (*see* AR 42, 45, 47, 50-54, 58, 281-82, 303-307).  However, as the Commissioner points out, Dr. Lash's opinion is not so qualified and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The ALJ's interpretation here is not rational; rather, it appears infected by a bias against Plaintiff's treating physicians such that the ALJ was looking for any reason, however small, to discount their opinions.  It is plain from reading the entire document that these boxes were checked in error.  Notably, Dr. Williams also checked a box indicating that Plaintiff's condition does not prevent her from providing care for her children in her home, but the ALJ did not find this inherently inconsistent with Dr. Williams' corresponding finding that Plaintiff is unable to work.  (AR 586.)

Accordingly, the Court concludes that the ALJ failed to give specific and legitimate reasons for giving less weight to Dr. Lash's opinion that those of Drs. Johnson and Bai; the one minor inconsistency noted on Dr. Lash's evaluation is not sufficient standing on its own.

### 3.   Examining Physician Dr. Cohen

As with the opinion of Dr. Williams, the ALJ afforded no weight to the opinions of Plaintiff's examining physician Dr. Cohen.  The ALJ did so because she found that: "Dr. Cohen's conclusions are entitled to no weight as she is not a treating physician nor an orthopedic or physical medicine and rehabilitation specialist, she saw the claimant on a one-time basis and, of note, is employed by the claimant's attorney, suggesting that her examination was not performed

United States District Court
Northern District of California

1   at arms length.' (AR 21.) As with "the opinion of a treating doctor, the opinion of an examining

2   doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate

3   reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821,

4   830-31 (9th Cir. 1995) (internal citation omitted). The ALJ's rationale for affording no weight to

5   Dr. Cohen's opinion is not sufficiently specific and legitimate nor is it supported by substantial

6   evidence.

7          First, the ALJ rejected Dr. Cohen's opinion because she only examined Plaintiff one time;

8   however, Dr. Bai and Dr. Johnson—on whose opinions the ALJ relies—likewise only examined

9   Plaintiff one time.

10          Second, that Dr. Cohen was employed by Plaintiff's attorney is not in and of itself a reason

11   to completely disregard her opinion. "In the absence of other evidence to undermine the

12   credibility of a medical report, the purpose for which the report was obtained does not provide a

13   legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (emphasis

14   added). In *Reddick*, the court concluded that solicitation of the doctor by plaintiff's attorney did

15   not affect his credibility because the doctor had examined the plaintiff for several years, his report

16   was consistent with his previous reports, and his findings were not contradicted by any examining

17   physicians. Likewise, in *Nguyen v. Chater*, the court found that the ALJ had erred in rejecting an

18   examining psychologist's opinion on the basis that it was solicited by the claimant's attorney,

19   finding that there was no indication of "actual impropriety" and the psychologist's report was

20   based on an examination and a battery of tests. 100 F.3d 1462, 1464 (9th Cir. 1996). The court

21   concluded, "[t]hat does not mean that [the examining psychologist] was correct or that his report

22   must prevail, but it does mean that [his] credibility is not subject to attack on the basis of the

23   source of his patient's referral." *Id.* Here, Dr. Cohen's opinion was based on a complete review of

24   Plaintiff's medical history and a thorough physical examination. Her findings are not conclusory

25   or ambiguous, but rather, are clearly stated and supported by her observations and test results. Nor

26   is there any indication that Dr. Cohen engaged in impropriety with respect to her report. Finally,

27   the medical evidence, including the MRIs, support her findings. (AR 391-93.) Therefore, the

28   Court concludes that the ALJ erred to the extent that she rejected Dr. Cohen's opinion on the basis

1   of the circumstances under which it was obtained.

2          Third, the ALJ rejected Dr. Cohen's opinion that claimant would have severe difficulty

3   with fine motor movements, and push/pull motions with her right and left hands due to probable

4   bilateral DeQuervain's tenosynovitis with decreased right grip strength and right thumb opposition

5   strength.  However, the ALJ did not provide an independent basis for doing so beyond her

6   aforementioned critique of Dr. Cohen's report based on its solicitation by counsel.  Moreover, Dr.

7   Cohen's finding that Plaintiff would have difficulty with fine motor movements and push and pull

8   motions with her right and left hands is supported by the overall record.  (AR 386, 457, 474.)

9          Finally, as discussed above, that Dr. Cohen is not an orthopedic specialist is not enough

10  standing on its own to reject Dr. Cohen's opinion.

11         The ALJ thus erred by failing to give specific and legitimate reasons for giving no weight

12  to the opinion of Dr. Cohen.

13  **B.     The ALJ's Rejection of Listing 1.04(A)**

14         Plaintiff next contends that the ALJ erred in rejecting Dr. Cohen's finding that Plaintiff

15  satisfied listing 1.04(A).  "If a claimant has an impairment or combination of impairments that

16  meets or equals a condition outlined in the "Listing of Impairments," then the claimant is

17  presumed disabled at step three, and the ALJ need not make any specific finding as to his or her

18  ability to perform past relevant work or any other jobs. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.

19  2001) (citing 20 C.F.R. § 404.1520(d)).  The claimant, that is Plaintiff, bears the burden of proving

20  that she satisfied the listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

21         Plaintiff has identified evidence that supports a finding that she meets listing 1.04(A).

22  Listing 1.04(A) provides:

23                 Disorders of the spine (e.g., herniated nucleus pulposus, spinal
                   arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
24                 disease, facet arthritis, vertebral fracture), resulting in compromise
                   of a nerve root (including the cauda equina) or the spinal cord. With:
25                 A. Evidence of nerve root compression characterized by neuro-
                   anatomic distribution of pain, limitation of motion of the spine,
26                 motor loss (atrophy with associated muscle weakness or muscle
                   weakness) accompanied by sensory or reflex loss and, if there
27                 is involvement of the lower back, positive straight-leg raising test
                   (sitting and supine).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    20 C.F.R. § 404, Subpt. P, App. 1.  Dr. Cohen specifically identified the evidence that

2    supports her opinion that Plaintiff meets the listing.  (AR 584.)  During the ALJ proceedings

3    Plaintiff repeatedly asserted that she met the listing 1.04A and identified the evidence in support

4    of that assertion.  (AR 38, 323, 367-68, 580-84).

5    Notwithstanding the centrality of the listing 1.04A issue, the ALJ rejected Plaintiff's

6    contention without discussion, other than to state that she gave Dr. Cohen's opinion no weight.

7    (AR 21.)  As explained above, the ALJ failed to provide specific and legitimate reasons for

8    rejecting Dr. Cohen's opinion.  Moreover, "[a]n ALJ must evaluate the relevant evidence before

9    concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate

10   finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*

11   *v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  This rule "simply requires an ALJ to discuss and

12   evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do

13   so under the heading 'Findings.'" *Id*. at 513.

14   Plaintiff argues that the ALJ's conclusory statement regarding listing 1.04 is not legally

15   sufficient.  The ALJ, however, did discuss the medical evidence, including the MRIs of Plaintiff's

16   spine, at length in section four.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990)

17   (concluding that "it is unnecessary to require the Secretary, as a matter of law, to state why a

18   claimant failed to satisfy every different section of the listing of impairments" where the ALJ's

19   opinion otherwise evaluates the evidence and thus lays the "foundation[] on which the ultimate

20   factual conclusions are based.").  Nonetheless, it remains unclear why Plaintiff's "severe"

21   degenerative disc disease of the cervical spine and "severe" central canal bilateral neuroforaminal

22   stenosis do not meet listing 1.04(A).  None of the doctors that the ALJ gave great weight to

23   explicitly rejected the listing and the MRIs show significant damage to the spine.  (AR 391-93,

24   592-96, 609-12.)  When the "Court simply cannot determine from the ALJ's opinion how [s]he

25   came to the conclusion that [Plaintiff's] 'severe' impairments did not equal" the listing, the "ALJ's

26   recitation of the evidence does not provide an adequate foundation for [her]" finding that the

27   listing was not met.  *Santiago v. Barnhart*, 278 F.Supp.2d 1049, 1058 (N.D. Cal. 2003).

28   Defendant also argues that the ALJ's discussion of the opinions of Drs. Johnson and Bai

21

1   satisfied the ALJ's burden because these doctors "opined that Plaintiff remained capable of

2   performing a reduced range of light work, meaning necessarily that Plaintiff was not so limited as

3   to meet or equal a listing level impairment."  *Id*.  However, Plaintiff's alleged capability of

4   performing a reduced range of light work does not necessarily contradict listing 1.04(A).  The

5   listing requires there to be "motor loss," not absolute motor loss or paralysis.  That Plaintiff can

6   *only* perform a reduced range of light work actually substantiates the requirement of motor loss

7   and muscle weakness.  Further, neither Dr. Johnson nor Dr. Bai mentioned anything about listing

8   1.04(A).  Under the circumstances of this case, the ALJ erred by making a conclusory boilerplate

9   statement that listing 1.04(A) was not met.

10          Given the Court's conclusion that the ALJ's analysis at Step Three was legally insufficient

11   and in error, as was the ALJ's rejection of Dr. Cohen's testimony which established that Plaintiff

12   met listing 1.04(A), the Court need not consider Plaintiff's additional arguments that the ALJ's

13   RFC determination and credibility determination were also in error.  As discussed below,

14   regardless of the outcome of those arguments, the Court concludes that this case must be

15   remanded for an award of benefits.

16   **C.  The Scope of Remand**

17          Plaintiff asks that the Court remand for an award of benefits under the credit-as-true rule.

18   A court may remand for an award of benefits under this rule where "(1) the record has been fully

19   developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has

20   failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

21   medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

22   would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995,

23   1020 (9th Cir. 2014).  Each part of this three-part standard must be satisfied for the court to

24   remand for an award of benefits, *id*., and "[i]t is the 'unusual case' that meets this standard."

25   *Williams v. Colvin*, No. 12-CV-6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting

26   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).)

27          Here, all three prongs are met as to the ALJ's erroneous conclusion that Plaintiff did not

28   satisfy the 1.04A listing.  The record is fully developed; indeed, it was Plaintiff's primary

United States District Court
Northern District of California

22

argument before the ALJ.  The ALJ gave a legally insufficient reason for rejecting Plaintiff's evidence that she satisfied the listing.  And if Plaintiff's evidence, including the opinion of Dr. Cohen, is credited as true, the ALJ would be required to find Plaintiff satisfies the listing and is thus disabled.  Remand for an award of benefits is therefore proper.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (finding that remand for payment of benefits was proper where ALJ improperly discredited the treating doctor's opinion showing that the plaintiff met an impairment in the Listings); *Williams*, 2014 WL 957025, at *16 (same).

CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment (Dkt. No. 16) is GRANTED and Defendant's motion for summary judgment (Dkt. No. 20) is DENIED.  This matter is REMANDED for an award of benefits.

**IT IS SO ORDERED.**

Dated:  October 10, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

23